CLAUS H. ALBERS, Plaintiff in Error, v. THE MER-
CHANTS' EXCHANGE OF ST. LOUIS *et al.*,
Defendants in Error.

St. Louis Court of Appeals, May 5, 1891.

1.  Corporations: BREACH OF DUTY BY DIRECTORS: REMEDY. If
    directors of a corporation commit breaches of their trust, the gen-
    eral rule is that the corporation itself is the proper party to bring
    an action to redress the wrong. Before a court of equity will, in
    such case, open its doors to a stockholder individually, although
    he comes, as he must, on behalf of all stockholders, he must show
    that there is no other road to redress; and he does not show this,
    until he shows that all the remedies within the corporation itself
    have been exhausted.

2.  —— : —— : —— : PLEADING. It is not necessary, however,
    for such stockholder to make a request of the directors that they
    should sue themselves. Moreover, an averment in a petition that
    the corporation, being wholly under the influence and control of
    the directors, declines and refuses to institute a suit against them,
    is tantamount to an allegation of such a request.

3.  —— : —— : —— : ——. In many cases it will not be suf-
    ficient for him to show that he has made such a request, and that
    it has been refused, but he must exhibit a state of facts from which
    the court can conclude that he has exhausted all reasonable efforts
    to induce corporate action, and his pleading must set forth in detail
    the efforts made by him. And *held*, in the case at bar, which was
    a suit by one member of a corporation, whose membership was
    three thousand, that he must show that he has endeavored in good
    faith, through corporate meetings or otherwise, to induce the appro-
    priate affirmative action on the part of a majority of the stock-
    holders; and *held*, further, that the petition in the cause did not
    comply with this rule.

4. ———: ———: ACTS ULTRA VIRES.: REMEDY.   Where the breaches of trust by the directors constitute acts which are *ultra vires* of the corporation, which, for that reason, cannot be ratified by a majority of the stockholders against the dissent of the minority, a single stockholder may have relief in equity ; yet, even in such a case, before a court of equity will open its doors to one of the dissenting minority, it ought to clearly appear that he is not the only one who complains, or that, if he is the only one, the loss sustained by him is of a substantial character.   And *held*, in this case, that the action could not be sustained, since it was brought by one of the three thousand members of a corporation, and his *pro rata* share of the loss alleged amounted to only seventy-eight cents, and, moreover, no other member had joined in the action, though it had been pending for more than a year.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Jos. S. Laurie*, for plaintiff in error.

*F. N. Judson*, for defendants in error.

( 1 )   The petition fails to show any legal capacity in plaintiff to sue upon the alleged causes of action, which admittedly belong primarily to the Exchange corporation itself.   3 Pomeroy Eq. Juris., pp. 10, 11 ; 1 Morawetz on Corp., sec. 240 ; Angell & Ames on Corp., sec. 312 ; Thompson on Liability of Officers & Agents of Corp., p. 382, *et seq.; Hawes v. Oakland*, 104 U. S. 450 ; *Slattery v. Trans. Co.*, 91 Mo. 217 ; *Buckley v. Iron Co.*, 77 Mo. 105 ; *Samuel v. Holloway*, 1 Wool. 414 ; *Huntington v. Plummer*, 104 U. S. 482 ; *Detroit v. Dean*, 106 U. S. 542 ; *Dimpfel v. Railroad*, 110 U. S. 209 ; *City of Quincy v. Steel*, 120 U. S. 240 ; *Taylor v. Holmes*, 127 U. S. 489 ; *Danmeyer v. Coleman*, 11 Fed. Rep. 97 ; *Bill v. Tel. Co.*, 16 Fed. Rep. 9 ; *Newby v. Railroad*, 1 Saw. 63 ; *Allen v. Wilson*, 28 Fed. Rep. 677 ; *Brewer v. Theater Co.*, 104 Mass. 378 ; *Dunply v. Newspaper Ass'n*, 146 Mass. 495 ; *Hersey v. Veazie*, 24 Maine, 9 ; *Greaves v. Gouge*, 69 N. Y. 157 ; *Blake v.*

*Higgins*, 2 Tenn. Ch. 780; *Rathbone v. Gas Co.*, 31 W. Va. 798; *Doud v. Railroad*, 65 Wis. 108; *Wear v. Buzimore*, 58 Geo. 318; *Foss v. Harbottle*, 2 Hare, 461; *McDougall v. Gardiner*, 1 Ch. Div. 13; *Duckett v. Grover*, 6 Ch. Div. 82; *Mason v. Haynes*, 11 Ch. Div. 197; *Mozely v. Alston*, 1 Phil. Ch. 13. The allegations of the petition are wholly insufficient to bring plaintiff within the recognized exceptions to the rule requiring demand upon and refusal by the corporation itself to bring the suit, as conditions precedent, to plaintiff's right to sue, it not appearing: *First.* That defendants had control of the corporation, by the control of a majority of the capital stock (the corporation having no stock, but consisting of three thousand members). *Second.* Nor that the delay incident to an application to the corporation members would endanger the relief sought. See authorities, *supra.* It devolved upon plaintiff to set out the facts of demand and refusal, *i. e.,* the constitutive facts, excusing such demand. *State v. Hudson*, 13 Mo. 61; *Parks v. Heman*, 7 Mo. App. 14; *Pier v. Heinrikhopper*, 52 Mo. 333. (2) The alleged irregularity, in disregard of corporate rules as to acts *intra vires* of the corporation, constitutes no cause for judicial interference at instance of minority stockholders or members. 1 Morawetz on Corp., sec. 242; *Foss v. Harbottle*, 2 Hare, 461; Thompson on Liability of Officers & Agents of Corp. 388. Even if the appropriations were *ultra vires* of the corporation itself, there is no allegation of fraud, or criminal negligence, warranting enforcement of personal liability against corporate officers for consummated acts. *Hodges v. Screw Co.*, 1 R. I. 312; 1 Morawetz on Corp., secs. 557, 558; *Spering's Appeal*, 71 Pa. 24; Cook on Stockholders [2 Ed.] sec. 702. Neither of the appropriations complained of was *ultra vires*, but each was within the declared purposes of the Exchange organization. The attitude of plaintiff is inequitable, and deserving of no consideration from a court of equity

THOMPSON, J.—The question for decision in this case arises upon the ruling of the circuit court in sustaining a demurrer to the following petition :

"Plaintiff by leave of court, in behalf of himself and such other members and stockholders of the Merchants' Exchange of St. Louis, as may desire to come in, files this his amended petition and states that the Merchants' Exchange of the city of St. Louis is a business corporation, duly created and organized in pursuance of the laws of the state of Missouri ; that said corporation is composed of merchants, dealers and manufacturers of the city of St. Louis, and was organized not for the benefit of others, but for the mutual pecuniary benefit and convenience of its members ; that the purpose of said corporation was to organize the merchants, dealers and manufacturers of St. Louis into a body corporate, and, by the adoption and enforcement of appropriate rules regulations and by-laws, to inculcate into the minds of its members just and equitable principles of trade, establish and maintain uniformity in the commercial interests of the city of St. Louis, and to avoid and adjust, so far as practicable, the controversies and misunderstandings which might arise between members engaged in trade, also to acquire, preserve and disseminate for the benefit of its members valuable business information, and provide for said members an Exchange hall, where they could assemble at stated hours, and, under the supervision of the corporation, buy and sell the various commodities of the market, and, also, by the imposition and collection of initiation and inspection fees, assessments and other charges, to create a source of revenue and derive a pecuniary income for the use and benefit of the corporation and its members.

" Plaintiff states that said corporation, for the government of its affairs and the protection of its members formally adopted certain rules, and regulations and

by-laws, which the members and officers of said corporation undertook and agreed to respect and obey, until the same should be regularly altered or repealed; among said rules are the following, which at the dates hereinafter mentioned were, and still are, in full force and effect:

### "'Rule 4.

"'Section 1. All the financial and business concerns of the Exchange shall be managed by and conducted *in accordance with the rules,* by and under the direction of the board of directors.

"'Section 13. No appropriation shall be made for any purpose outside of the *legitimate expenses* of the Exchange without first submitting the same to a vote of the members, five days' previous notice having been given by posting the same conspicuously in the Exchange rooms.

"'Section 14. The bonds and securities now held by the Exchange shall be constituted a reserve fund. All interest received therefrom and all surplus revenue of the Exchange, as ascertained by the board of directors at the close of each year, shall be added thereto, and said fund shall be kept separate and distinct on the books of the Exchange. No appropriation shall be made from said fund by the board of directors for any purpose whatsoever, nor shall this rule be repealed, except with the approval and consent of the members of the Exchange at a ballot taken thereon, thirty days' notice having been given in the usual way, and three-fourths of the members voting favoring the proposition.

### "'Rule 5.

"'The secretary shall be the treasurer of the Exchange, and as such shall receive and keep a correct account of all moneys belonging to the Exchange, and shall disburse the same under the direction of the board of directors.

### " ' Rule 6.

" 'None of the rules, regulations or by-laws of the Exchange shall be rescinded or altered, nor any new ones made, unless by a vote of two-thirds of the members voting at a special or regular election ordered by the board of directors, and after notice of the proposed change shall have been conspicuously posted in the Exchange room for at least ten days; except that section 14 of the rule 4 shall not be repealed or amended except as therein provided.'

"Plaintiff states that said corporation consists of about three thousand members; that the initiation fee is $2,500, and upon the payment of said sum, together with the amount of an annual assessment, by one elected to membership, a certificate of membership is issued to him by the corporation, which certificate represents a share of the corporation, has a market value and is transferable, and entitles the holder to all the rights and privileges of membership, including an equal *pro rata* share and interest in the funds and property owned by the corporation; that plaintiff is, and has been for many years past, a member and shareholder of such corporation, and has such certificate of membership; that said corporation now has, and for many years past has had, an annual income of about $67,000 derived from fees, fines, assessments and rents; that the legitimate expenses of the corporation, as referred to in the rule aforesaid, are rent of Exchange hall, salaries, telegraphic market reports, printing, stationery, postage, papers, taxes, insurance and repairs; that, after the payment of said legitimate expenses, there remains yearly a cash surplus, which is required by the rules of the corporation to be set apart by the directors at the close of each year as a reserve fund, and to be held by the corporation in trust for its members; that, by reason of such accumulations from the surplus annual revenue of preceding years, there is now in the treasury of said corporation a reserve fund consisting of interest-bearing

bonds and securities, of the cash value of $500,000 ; that the secretary collects all moneys due the corporation from the various sources, retaining the same in his custody as treasurer subject to the order of the board of directors, and disburses and applies the same under their direction.

"Plaintiff states that the above-named individual defendants do, and did at the dates hereinafter mentioned, comprise and constitute the board of directors of said Merchants' Exchange of St. Louis, having been duly elected and having qualified and acted as such ; that said defendants, as such board of directors, having control over the disbursement and application of the annual income of the corporation, were in duty bound, for the protection and advancement of the interests of said corporation and its members, to manage the same with frugality, and disburse none except such as might be necessary to defray the legitimate expenses of the corporation, in order that at the close of the year there might be the largest possible surplus to be by them added and applied to the reserve fund aforesaid, and were expressly required to conduct all the financial and business concerns of the corporation in accordance with the rules prescribed, but that said defendants, as such board of directors, wholly disregarding their official duties and obligations in the premises, did, on or about the thirteenth day of December, 1889, with a view of buying for the corporation a certain hotel in the city of St. Louis, known as the Planters' House, purchase from the owner as in behalf of the corporation, a thirty days' option on said property, in payment of which, they wrongfully and unlawfully appropriated and disbursed from the moneys belonging to the corporation, collected and held by the secretary and treasurer as aforesaid, the sum of $781.75.

"Plaintiff states that said appropriation of money, made by the directors as aforesaid, was illegal and wrongful in the following particulars :

"*First.* A purchase by the corporation of such property was not authorized by its charter, and the appropriation of money to that end was in violation of the charter and *ultra vires* the corporation.

" *Second.* Said appropriation was not within the scope of the powers of the board of directors, and was in direct violation of the by-laws of the corporation, the same having been made for a purpose outside of the legitimate expenses of the Exchange, and without submitting it to a vote of the members as required by section 13, rule 4, set forth as above.

" *Third.* Said appropriation was an unwarranted and wilful diversion by said defendants of the funds of the corporation, whereby said sum was prevented from being added to the reserve fund of the corporation, as it should have been, and said conduct on the part of the directors was a breach of trust and in fraud of the rights of the members of the corporation. Furthermore, plaintiff avers that said appropriation was, and is, contrary to the wishes of a large majority of the members of the corporation, and when the proposition involving the purchase by the corporation of said Planters' House property was, during the interval covered by said option, submitted by said directors to a vote of the members of the corporation for the purpose of securing their approval and indorsement, the same was promptly repudiated and rejected by the vote of a large majority of the members.

" Plaintiff states that, by reason of the violation by said directors of their duties and their abuse of power as aforesaid, said sum has been wasted and wholly lost, and the corporation and its members have suffered damage accordingly ; that he has exhausted all the means within his reach to right said wrong and secure redress, but that said corporation, being wholly under the influence and control of said directors, the defendants herein, declines and refuses to institute any suit or proceedings against said defendants for the recovery of

said money or to prosecute any action for relief in the premises.

"And plaintiff, therefore, prays that said defendant directors may be required to refund and repay said sum of $781.75, with interest, into the treasury of the corporation, or, in default thereof, that judgment be rendered herein for the use of said corporation against said defendants individually for said sum with interest, and for such other and further relief as may seem just and proper, including his reasonable costs in this behalf expended ; plaintiff will ever pray.

"Plaintiff submits a second cause of action, and, in order to avoid repetition, refers to and adopts as part of the present count all the allegations in the preceding count touching the organization of the Merchants' Exchange as a corporation, the scope of its charter, its rules, regulations and by-laws, the rights and interests of members and the duties and obligations of defendants as directors of the corporation, and states that said defendant directors, wholly disregarding their official duties and obligations, did, on or about December 31, 1889, wrongfully and unlawfully appropriate and disburse from moneys belonging to the corporation collected and held by the secretary as treasurer, as stated in the preceding count, the sum of $250, by donating said sum for the benefit of an organization existing throughout the state, known as the Farmers & Laborers' Union, and applying it to the payment of rent of a certain hall in St. Louis hired for the entertainment of representative members of said association, who for their own pleasure and interests were then sojourning in the city of St. Louis ; that said association is a political organization, whose avowed mission is to advance the interest of certain classes, to-wit, farmers and laborers, by electing its adherents to office and shaping the legislation of the country in conformity to its views ; that said appropriation was for a purpose entirely foreign to the business of the Merchants'

Exchange corporation, and was not within the scope of its charter; that said appropriation was made by the directors of their own motion, and without submitting it to a vote of the members of the corporation as required by section 13, of rule 4, hereinbefore set forth, and was in direct violation of the express provisions of said rule; that said appropriation was an unwarranted and wilful diversion and misapplication by the said directors of the funds of the corporation, whereby said sum was prevented from being added to the reserve fund of the corporation, as it should have been under the rules aforesaid; that it was a gift by said directors of the money belonging to the corporation and its members, and was a breach of trust upon the part of said directors and in fraud of the rights of the members of the corporation.

"Plaintiff states that, by reason of the violation by said directors of their duties and their abuse of power as aforesaid, said sum has been wasted and wholly lost; that he and other members of the Exchange protested against such action on the part of the directors, and he has exhausted all the means within his power to secure redress in behalf of the corporation for the wrong thus done by the directors, but that said corporation is wholly under the influence and control of said directors, the defendants herein, and declines and refuses to institute any suit or proceedings against said defendants for the recovery of said money, or to prosecute any action for relief in the premises.

"Wherefore plaintiff prays that a decree may be entered, requiring said defendant directors to refund and repay into the treasury of the corporation said sum of $250 with interest, or, in fault thereof, that judgment be entered in behalf of said corporation against said defendants individually for said sum with interest, and for such other and further relief as may be just and proper, including the reasonable costs in this behalf expended.

" Plaintiff offers a third cause of action, and, in stating the same, for the purpose of avoiding repetition, refers to and adopts as part of this count all the allegations in the first count of this petition, touching the organization of the Merchants' Exchange as a corporation, the scope and purposes of its charter, its rules, regulations and by-laws, the rights and interests of plaintiff and members generally, and the duties and obligations of defendants as directors, and further says that said defendant directors, wholly disregarding their official duties and obligations, did, on or about the —— day of November, 1889, wrongfully and unlawfully appropriate and disburse from the moneys belonging to the corporation, collected and held by the treasurer as stated in the first count, the sum of $1,305.30, by donating and expending said sum for the payment of the expenses and entertainment in St. Louis of a body of foreigners known as the Pan-American Congress, who were at the time for their own personal satisfaction and edification in course of a junketing tour through this country ; that said appropriation was for a purpose entirely foreign to the business of the Merchants' Exchange corporation, and was not within the scope of its charter; that said appropriation was made by said directors of their own motion, and without submitting it to a vote of the members of the corporation as required by section 13, rule 4, hereinbefore set forth, and was in direct violation of the express provisions of said rule ; that said appropriation was an unwarranted and wilful diversion and misapplication by the said directors of the funds of the corporation, whereby said sum was prevented from being added to the reserve fund of the corporation, as it should have been under the rules aforesaid ; that it was a gratuitous contribution and a gift by said directors of the money belonging to the corporation and its members, and was a breach of trust upon the part of said directors, and in fraud of the rights of the members of the corporation.

"Plaintiff states that by reason of the violation by said directors of their duties, and their abuse of power as aforesaid, said sum has been wasted and wholly lost; that he and other members of the Merchants' Exchange protested against said action on the part of the directors, and he has exhausted all the means in his power to secure redress in behalf of the corporation for the wrong thus done by the directors, but that said corporation is wholly under the influence and control of said directors, the defendants herein, and declines and refuses to institute any suit or proceeding against said defendants for the recovery of said money, or to prosecute any action for relief in the premises. Wherefore, plaintiff prays that a decree may be entered, requiring said defendant directors to refund and repay the said sum of $1,305.30, with interest, into the treasury of the corporation, and, in default thereof, that judgment for said amount with interest be rendered in behalf of the corporation against said directors individually, and for such other and further relief as may be just and proper, including the reasonable costs in this behalf expended."

The suit was brought by plaintiff on behalf of himself and such other members of the Exchange "as may desire to come in;" but, although the suit was filed on January 3, 1890, and remained pending in the circuit court until final judgment on demurrer in favor of defendant was entered on February 3, 1891, no other of the three thousand members constituting the Exchange joined in the suit.

To each of the three counts of this petition defendant demurred on the following grounds:

*First.* That plaintiff did not show legal capacity to sue.

*Second.* That the petition did not state facts sufficient to constitute a cause of action.

The demurrer having been sustained, plaintiff declined to plead further, and final judgment was entered in favor of defendants. The cause was thereupon brought to this court by writ of error.

We apprehend that it will not be necessary to go further than to consider the question raised by the first ground of the demurrer,—the legal capacity of the plaintiff to maintain this action. We are of opinion that the foregoing petition fails to disclose a legal right in the plaintiff to maintain this action, for the reason that it fails to state facts from which the conclusion can be drawn, that the plaintiff and the other objecting members have exhausted all the means in their power to secure a redress of the grievances complained of, by the corporation itself, and through corporate action.

The directors of a corporation are, in theory of the courts of law, its agents. In theory of the courts of equity, they are its trustees. In theory of courts of equity, they are also trustees for the general body of shareholders or members. If, therefore, they commit breaches of their trust, the general rule is that the corporation itself is the proper party plaintiff to bring an action to redress the injury. The right of action, considered as a beneficial right, resides in the aggregate body of shareholders, and the action is prosecuted for the benefit of all the shareholders. As the corporation is the legal entity which represents all the shareholders, the action is properly brought in the corporate name.

Exceptions to this rule have been recognized, where the circumstances are such that the action cannot be brought in the corporate name. Such an exception generally arises in cases where the directors, who are guilty of the breach of trust, own or control a majority of the shares, so that they can perpetuate themselves in power, keep control of the corporation, and defy the minority. In such cases the minority would be remediless, if the courts of equity did not open their doors to them. But courts of equity cannot assume the management of all the corporations in the country; and, if they were to open their doors to every dissatisfied or dissenting stockholder, in cases where he should fail to

disclose facts making it clear that no redress could be had through regular corporate action, litigation of this kind would be endless; for, as was forcibly said by MELLISH, L. J., if a mere irregularity in the business of a company "gives a right to every member of the company to file a bill to have the question decided, then, if there happens to be one cantankerous member, or one member who loves litigation, everything of this kind will be litigated; whereas, if the bill must be filed in the name of the company, then, unless there is a majority who really wish for litigation, the litigation will not go on." *MacDougall v. Gardiner*, 1 Ch. Div. 13, 20.

It is, therefore, a settled principle of equity jurisprudence, that before a court of equity will open its doors to a single stockholder, although he comes, as he must, not only on behalf of himself but also in behalf of all the other stockholders, to an inquiry into grievances of this kind, he must show that there is no other road to redress; and he does not show this, unless he shows that all remedies within the corporation itself have been exhausted. This principle was stated by our supreme court in *Bulkley v. Iron Co.*, 77 Mo. 105, in the following language: "It is well settled that the right to sue for breaches of trust by the directors of a corporation, resulting in injury or loss to the stockholders, is primarily in the corporation, and it should appear from the facts stated in the petition, filed by a stockholder that a right to maintain an action for the wrong and injuries set forth in his petition has accrued to him either by reason of the refusal of the corporation to sue, or because the parties to be sued are in control of the corporation." In the subsequent case of *Slattery v. Trans. Co.*, 91 Mo. 217, these principles were elaborated by our supreme court, speaking through Judge BLACK, and the language of the vice-chancellor in the leading case of *Foss v. Harbottle*, 2 Hare, 492, so often cited, was quoted with approval: "If a case

should arise of injury to a corporation by some of its members, for which no adequate remedy remained, except that of a suit by individual corporators in their private characters, and asking, in such character, the protection of those rights, to which, in their corporate character, they were entitled, I cannot but think that the principle so forcibly held by Lord COTTENHAM in *Wallworth v. Holt*, 4 Myl. & Cr. 635, and other cases, would apply, and the claims of justice could be found superior to any difficulties arising out of technical rules respecting the mode in which corporations are required to sue."

Applying these principles to the petition under consideration, it is to be observed that it does not state that the plaintiff has made a request of the directors to bring such an action, as the one which he now brings on behalf of himself and other stockholders. We do not regard the petition as fatally defective for the want of such an averment, for two reasons : *First.* It does aver "that said corporation, being wholly under the influence and control of said directors, the defendants herein, declines and refuses to institute any suit or proceeding against said defendants," etc. This we regard as tantamount to an allegation that the corporation so declines and refuses, because such action could only be taken by the affirmative action of the directors who wield the powers of the corporation, and who decline and refuse so to act. As the demurrer admits this to be true, it would seem that an allegation, that the directors had been requested by the plaintiff to sue, would be the allegation of something which is in the nature of a supererogation. *Second.* Although the general rule is that an individual stockholder will not be allowed to sue, unless a request has been made to the directors that they bring the action and they have refused, yet this rule in the opinion of many courts has no application where the action to be brought is against the directors themselves to redress their own breaches of trust.

Although there is some opinion to the contrary, yet the courts are now generally receding from the obvious nonsense of the proposition, that a plaintiff, in order to get a right of action, must make a request to another party to sue himself. The following cases hold that, in actions like the present, no such request is necessary : *Heath v. Railroad*, 8 Blatchf. 347 ; *Rothwell v. Robinson*, 39 Minn. 1 ; *Crumlish v. Railroad*, 28 W. Va. 623, 633 ; *Moyle v. Landers*, 78 Cal. 99 ; s. c., 21 Pac. Rep. 733 ; *Davis v. Gemmell*, 70 Md. 356 ; s. c., 17 Atl. Rep. 259 ; *Barr v. Glass Co.*, 40 Fed. Rep. 412; *Rogers v. Agricultural Works*, 52 Ind. 296 ; *Nathan v. Tompkins*, 82 Ala. 437; *Anderton v. Wolf*, 41 Hun, 571: *Ashton v. Dashaway Association*, 22 Pac. Rep. ( Cal. ) 660 ; s. c., 7 L. R. A. 809.

But a request to the directors to bring the appropriate action is not the only mode by which the shareholder may obtain redress through the appropriate corporate action. In many cases it will not be enough for him to show that he has made such a request and that it has been refused ; but he must exhibit *a state of facts*, from which the court can conclude that he has exhausted all reasonable efforts to induce redress through an action in the corporation itself. Among many recent cases, which so hold, are the following: *Rathbone v. Gas Co.*, 31 W. Va. 798 ; s. c., 8 S. E. Rep. 570 ; *Converse v. Dimock*, 22 Fed. Rep. 573 ; *Allen v. Wilson*, 28 Fed. Rep. 677. Moreover, when he brings a suit in equity to redress grievances which ordinarily can be redressed alone in an action brought by the corporation, his bill must set forth in detail the efforts made by him to secure on the part of the corporation the desired action, or it will be dismissed. *Foote v. Mining Co.*, 17 Fed. Rep. 46. These principles were set forth with great clearness by Mr. Justice MILLER in giving the opinion of the supreme court of the United States in the leading case of *Hawes v. Oakland*, 104 U. S. 450, 460, a case which is of great authority, not only

because of the character of the court, but also because of
the character of the judge who wrote the opinion, and we
may add, a case which seems to have met with universal
approval on the part of other American courts.  "But, in
addition to the existence of grievances which call for this
kind of relief, it is equally important that, before the
shareholder is permitted in his own name to institute
and conduct a litigation which usually belongs to the
corporation, he should show to the satisfaction of the
court that he has exhausted all the means within his
reach to obtain, within the corporation itself, the
redress of his grievances, or action in conformity with
his wishes.  He must make an earnest, not a simulated
effort, with the managing body of the corporation, to
induce remedial action on their part, and this must be
made apparent to the court.  If time permits, or has
permitted, he must show, if he fails with the directors,
that he has made an honest effort to obtain action by
the stockholders as a body, in the manner of which he
complains.  And he must show a case, if this is not
done, where it could not be done, or it was not reasona-
ble to require it.  The efforts to induce such action as
complainant desires on the part of the directors, and of
the shareholders, when that is necessary, and the cause
of failure in these efforts should be stated with particu-
larity, and an allegation, that complainant was a share-
holder at the time of the transactions of which he
complains, or that his shares have devolved on him
since by operation of law, and that the suit is not a col-
lusive one to confer on a court of the United States juris-
diction in a case, of which it could otherwise have no
cognizance, should be in the bill, which should be verified
by affidavit."  Following this decision, the supreme
court of Alabama have held, with what seems to be
entire propriety, that a bill by stockholders against a
corporation for mismanagement should show that the
plaintiffs have endeavored to secure their rights through
meetings of the corporation, and that they have solicited

the use of its name to bring suit against the offending directors. *Merchants & Planters Line v. Waganer*, 71 Ala. 581.

We may hold with equal propriety that, before a single member of a corporation, whose membership is three thousand, can maintain such an action, he must show that he has endeavored in good faith, through corporate meetings or otherwise, to induce the appropriate affirmative action on the part of a majority of the stockholders. In this case the petition does not show by what tenure the directors held their offices; for aught that appears they may be turned out by a majority of the shareholders at any time. It does not state that the corporation has a joint stock which can be accumulated by purchases and transfers in the hands of one or more of its members; nor does it show that the directors own a majority of the stock, so that they can perpetuate themselves in power, and prevent a redress of their breaches of trust except through the action of judicial courts, when appealed to by individual members. On the contrary it inferentially shows that each member has one share of the stock and one vote in the corporation. It states "that he (plaintiff) has exhausted all the means within his reach to right said wrong and secure redress, but that said corporation, being wholly under the influence and control of said directors, the defendants herein, declines and refuses to institute any suit or proceeding against the defendants for the recovery of said money, or to prosecute any action for relief in the premises;" but it does not state that he has endeavored to secure, through corporate meetings or otherwise, any affirmative action on the part of the corporation, either by turning out the directors whom he charges with the breaches of trust, or by the bringing of an appropriate action or actions against them, or otherwise. And while it is no doubt true that, where directors of a corporation commit breaches of their trust by the doing of acts which are *ultra vires* the corporation itself, and which

Albers v. Merchants' Exchange of St. Louis.

cannot, therefore, be ratified even by a majority of the stockholders against the dissent of the minority, a single shareholder may have relief in equity,—yet, even in such a case, before a court of equity will open its door to one of the dissenting minority, it ought clearly to appear that he is not the only one who complains, or that, if he is the only one, the loss which he has sustained is of a substantial character. Here, although according to the allegations of the petition, the cost of the plaintiff's membership in this corporation was $2,500 in the form of an initiation fee, in addition to annual dues,—yet it has been brought to our attention by a computation that the exact amount of his interest in the fund which has been lost by the alleged breaches of trust is seventy-eight cents. In a case where the plaintiff's loss is so small, and where no other member appears to have been willing, after the lapse of more than a year between the bringing of this action and its final determination, to join him in its prosecution, we may well adopt the observation of Mr. Circuit Judge SAWYER that, "it is always a suspicious circumstance where a single stockholder, among a large number of a corporation, rushes into a court of equity to vindicate, unaided and alone, the rights of the corporation and all other stockholders ; and especially is this so, where the amount of stock owned by him is so very limited that in case of success his own share of the recovery will be so small as to make the maxim *de minimis non curat lex* very properly applicable." *Danmeyer v. Coleman,* 11 Fed. Rep. 97.

The judgment of the circuit court will be affirmed. It is so ordered. All the judges concur.